## No. 20,257.

C. E. WAUGH, ET AL. v. DONALD KNUDSEN, ET AL.

(392 P. [2d] 169)

Decided May 11, 1964.

Messrs. THOMAS & THOMAS, Mr. WILKIE HAM, for plaintiffs in error.

Mr. John J. Vandemoer, Mr. Jack A. Vohs, for defendants in error.

*In Department.*

Opinion by Mr. Chief Justice McWilliams.

This writ of error poses a dispute between the Waughs and the Knudsens over the ownership of ten head of cattle, the Waughs alleging in their complaint that the Knudsens converted to their own use ten head of cattle of the value of $2,000 belonging to the Waughs. By answer the Knudsens denied that they converted to their own use any cattle belonging to the Waughs.

The following recitation of events tends to place the controversy in focus. In March 1959 one Samuelson, a cattle buyer, bought certain cattle from the Knudsens and immediately resold the same to the Waughs. This fact was known to all parties and therefore was in practical effect a direct sale by the Knudsens to the Waughs. The agreement provided Knudsens would drive their herd of cattle from their winter pasture, located some 8 miles northeast of Cheyenne Wells, to the stockyards in that town. There the cattle would be weighed, with the Waughs then paying for the cattle on a per pound basis. Accordingly, at about 7 o'clock in the morning of May 12, 1959 the Knudsens began driving some 427 head of cattle from their winter pasture to the stockyards at Cheyenne Wells, arriving at about 11 o'clock A.M.

On arrival the Knudsens announced to all that they were 10 head short, the Waughs themselves admitting that they too heard this declaration. Such did not interfere with the consummation of this transaction, however, inasmuch as the total purchase price was to be computed on the basis of so much per pound, and not so much per head. The Knudsens though were concerned with this loss and immediately launched a search

for the lost cattle. They were apparently uncertain whether the 10 head were lost enroute to Cheyenne Wells or were not driven from the winter pasture in the first instance. In either event the missing cattle could not be located and so the "weighing in" proceeded.

Certain of the herd were rejected by Waughs as being unfit, and of the cattle actually purchased about 100 were immediately trucked out to pasture in Kansas. Knudsens and Waughs both agreed that the balance of the cattle purchased, some 298 head, were driven west out of Cheyenne Wells at about 3 o'clock in the afternoon of May 12, 1959 enroute to the Waugh's pasture, situate about 10 miles northwest of that town. These cattle arrived at the Waugh pasture, which was described as "completely fenced" with woven wire, at about 7 o'clock on that same evening.

On May 13, 1959 Ed Waugh noticed several head of cattle outside this fenced in pasture, but still on his property. These cattle had escaped from the pasture because a part of the fence had been "kicked down by coyote hunters" and upon discovery the several head of cattle were put back in the pasture and the fence repaired.

On May 14, 1959 the Waughs began to rebrand this herd, completing the operation on the 15th. It was at about this time that the Waughs first began to suspect that they had lost some of their 298 head of cattle. A search of the immediate area disclosed two head, again outside the pasture, which were promptly "brought in and branded." Being unable to find any more cattle, the Waughs on May 19, 1959 made a tally and determined to their satisfaction that they were 10 head short. Ed Waugh said he later investigated and ascertained that the missing cattle had "simply found a gate open and moseyed out into a ravine."

Meanwhile, back at the Knudsen pasture, 10 head of cattle bearing the Knudsen brand "quarter circle reverse LK" were located on May 14, 1959, at the west

water tank, situate some three miles southeast of the Waugh pasture.

The Waughs first advised the Knudsens of their alleged loss of 10 head of cattle on May 19, 1959. Later they inspected the 10 head "found" in the Knudsen pasture, and though they could not positively identify them as theirs, they testified that the cattle were of the same general type sold to them by the Knudsens.

It is the Waughs' theory of the case that after the 10 head got out of their enclosed pasture they forthwith proceeded to return to their former pasture in response to "a natural habit of an animal to go back to the place where it had been," a rule of thumb successfully used in the case of lost sheep by Little Bo Peep of nursery rhyme fame. Waughs concede that they could not "positively" identify the 10 head, animal by animal, as belonging to them, though as mentioned above these cattle were said to be of the same general type sold them by the Knudsens.

The Waughs also testified that they saw some tracks which they believed were made by the lost cattle and which were headed in the direction of the Knudsen pasture. Several witnesses testified that at about this same time, i.e. sometime between May 12 and May 14, 1959, they saw several head of cattle in this vicinity which were at large and apparently headed in the general direction of the Knudsen property. None of these witnesses knew who owned the cattle which they claimed to have seen.

It is the Knudsens' theory of the case that the 10 head found in their pasture wearing their brand on May 14, 1959 were the 10 head which they lost in the drive to the stockyards in Cheyenne Wells on May 12, 1959. There was testimony to the effect that these cattle were "fresh," which it was said would not have been true if they had been herded some 18 miles on May 12th and covered an additional 3 miles on the following day. Also, according to the Knudsens they never learned

that the Waughs even claimed to have "lost" 10 head until some five days after it became known that they themselves had found 10 head.

The trial judge made very detailed findings, the gist of which was that the Waughs had failed to prove their case by a preponderance of the evidence, specifically noting that they "failed to establish with reasonable certainty that the cattle in Knudsens' possession were the ones they lost, if in fact they lost any." Accordingly, judgment was duly entered in favor of the Knudsens, which judgment the Waughs now seek to reverse.

It is the Waughs basic contention that though they could not "positively" identify the 10 head of cattle as being those which, according to them, had escaped their pasture, that nonetheless their evidence of ownership was so overwhelming as to virtually require the trial court to enter judgment in their favor and that the trial court committed grievous error in holding for the Knudsens.

It has been said so often as to be axiomatic that the findings of fact of a trial court sitting without a jury are binding and conclusive on review by writ of error unless the evidence is wholly insufficient to sustain them. See *Andersen-Randolph Co. v. Taylor,* 146 Colo. 170, 361 P. (2d) 142.

In determining whether the trial court erred in its finding that the Waughs failed to prove "ownership", it should also be kept in mind that the trial court not only heard the several witnesses but also saw them and under the scheme of things it is he who is charged with the responsibility of determining their credibility and evaluating their testimony. This Court by its inherent nature is ill-equipped to determine from a reading of the cold record the credibility of the various persons who testified in the trial court.

Suffice it to say that our examination of the record does not reveal that any error attaches to the various findings and conclusions made by the trial court. Cer-

tain factual matters were obviously in rather sharp dispute. In other regards though the facts themselves may have been undisputed, still reasonable minds might very well differ as to the inferences properly deducible therefrom. All of which is typical grist for the fact finding mill.

True, Waughs' evidence might create a lively suspicion that their cattle drifted back into the Knudsen pasture, but mere suspicion, even though lively, is not enough. In *Burgess v. Small,* (Maine 1955) 117 A. 2nd, 344 an action in trover involving stolen cattle it was said that in order for the plaintiff to prevail, his "identification [of the cattle] must be made with reasonable certainty." The trial court appears to have embraced the rationale of the *Burgess* case, and in so doing we perceive no error.

From the factual standpoint, the trial court as the trier of the facts has merely resolved a highly controverted issue and we are disinclined to indulge in any second guessing. Indeed under the circumstances we are not permitted to so do.

The judgment is affirmed.

MR. JUSTICE MOORE and MR. JUSTICE PRINGLE concur.